# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

TOM E. CARVER,                )
                              )
       Plaintiff,        )
                              )
v.                            )     Case No. CIV-16-409-RAW-SPS
                              )
NANCY A. BERRYHILL,           )
Acting Commissioner of the Social )
Security Administration,[1]   )
                              )
       Defendant.        )

## REPORT AND RECOMMENDATION

The claimant Tom E. Carver requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on June 16, 1965, and was forty-nine years old at the time of the administrative hearing (Tr. 30). He completed the twelfth grade, and has worked as a roustabout, dump truck driver, tree trimmer, electric motor repairer, and water maintenance worker (Tr. 19, 166). The claimant alleges he has been unable to work since April 18, 2013, due to pain in his lumbar spine, cardiomyopathy, hypertension, hypothyroidism, osteoarthritis, a mechanical-internal orthopedic device in his lower back, and high cholesterol (Tr. 165).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on April 18, 2013. His application was denied. ALJ John Belcher conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated March 5, 2015 (Tr. 12-21). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform light work as

defined in 20 C.F.R. § 404.1567(b), *i. e.*, he is able to lift/carry/push/pull no more than twenty pounds occasionally and ten pounds frequently, stand/walk for four hours out of an eight-hour workday, and sit for six to eight hours out of an eight-hour workday (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work that he could perform, *i. e.*, parking enforcement officer, semi-conductor bonder, and machine feeder (Tr. 19-20).

**Review**

The claimant alleges that the ALJ erred by: (i) failing to connect the medical evidence to the assigned RFC; (ii) failing to properly assess the opinion of his treating physician, Dr. Ellis; (iii) failing to properly assess his credibility; and (iv) improperly concluding there were jobs he could perform based on the vocational expert's testimony.[3] The undersigned Magistrate Judge agrees with the claimant's first and second contentions, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease of the lumbar spine and failed back syndrome, as well as the nonsevere impairments of hypertension, hypothyroidism, cardiomyopathy, and high cholesterol (Tr. 14). Relevant medical records reflect that the claimant underwent his first back surgery on November 16, 2010, based on spondylosis and stenosis, a synovial cyst at L4-5, and a herniated disk with severe hypertrophy (Tr. 270-271). This provided good pain relief for

---

[3] The undersigned Magistrate Judge notes that the claimant has failed to comply with LCvR 5.2(a) and 7.1(c) regarding format and the requirements regarding an indexed table of contents, but nevertheless proceeds on the merits of the arguments.

the first six weeks, but the pain gradually returned (Tr. 277-280). A follow-up MRI in February 2011 revealed excellent decompression at L4-5, but recurrent herniated disc and scarring at L5-S1 on the left, as manifested by left sciatic leg pain (Tr. 282). Noting such a poor post-surgical result, the surgeon recommended and subsequently performed a left redo laminectomy, left L5-S1 redo foraminotomy and microdiscectomy and annular repair at L5-S1 (Tr. 282-292). Two months following the second surgery, he was released to work full time with no restrictions, although the surgeon noted he continued to have "a moderate amount of intermittent back pain" (Tr. 293). His surgeon suggested wearing a back brace to lift over twenty-five pounds, but informed the claimant he could lift twenty-five to fifty pounds (Tr. 293).

Treatment notes reflect that, following his surgeries, the claimant continued to complain of pain and bilateral lower extremity weakness, and the notes further indicate decreased range of motion in back flexion and extension, as well as pain with range of motion (Tr. 245). Despite all these procedures, an MRI of the lumbar spine conducted on January 24, 2013, revealed degenerative disc and facet joint changes, postsurgical changes at L4-5 and L5-S1, disc bulge/osteophyte complexes at L4-5 and L5-S1 with resultant bilateral neuroforaminal narrowing at both of these levels, superimposed left neuroforaminal disc herniation at L5-S1 with evidence of involvement of the exiting left L5 nerve root and the descending left S1 nerve root that needed to be correlated clinically, and minimal grade 1 anterior subluxation of L4 on L5 (Tr. 238). The following month, records reflect that the claimant's pain had come back following his two back surgeries, and he underwent a series of three epidural steroid injections to

manage the pain and symptoms (Tr. 239-243). Following that series of steroid injections, the attending physician, Dr. John Finck, completed an Aflac form indicating that the claimant had retrogressed since surgery and was largely house confined because he was minimally ambulatory (Tr. 244). In Dr. Finck's opinion, the claimant was totally disabled beginning April 18, 2013, from his own job and any other work, and he never expected a change in this condition, despite trying the steroid injections post surgery with no benefit (Tr. 244). In support, Dr. Finck stated that the claimant's back restricted sitting/walking/standing, and that the claimant was also affected by cardiomyopathy with decreased ejection fraction (Tr. 244).

The claimant was largely treated at Pushmataha Family Medical Center by Dr. Edwin Ellis, and treatment notes reflect repeated notations that the claimant had absent reflexes since his last surgery, as well as shortness of breath attributed to cardiomyopathy (Tr. 300). On October 17, 2013, the claimant also had a positive straight leg raise test at 45 degrees, although it was negative March 12, 2014 despite continued absent reflexes (Tr. 306, 312).

On September 17, 2013, Dr. Ellis completed a physical Medical Source Statement (MSS), indicating that the claimant could sit/stand thirty minutes at a time, and walk twenty minutes at a time, up to one hour per day each, and that he would need an assistive device in the evenings, as well as rest breaks at hourly intervals or less and the need to alternate sitting and standing at thirty-minute intervals or less (Tr. 297). He indicated that the claimant could lift up to five pounds occasionally and up to ten pounds rarely, that the claimant had trouble using the brake and clutch with his lower extremities,

and that he could only occasionally push/pull (Tr. 298). Furthermore, he indicated that the claimant could occasionally squat, crouch, and kneel; rarely crawl; and that he could never bend, stoop, balance, or climb ladders, stairs, ramps, or scaffolds (Tr. 298-299). Finally, he indicated that the claimant needed to completely avoid unprotected heights, dangerous moving machinery, handling vibrating tools, and driving/riding in commercial automotive equipment (Tr. 299). As for the objective basis of this opinion, Dr. Ellis noted that the claimant had absent reflexes in his legs, a history of two back surgeries, documented past history of continued back problems, and the additional history including cardiomyopathy and an ejection fraction of 40% (Tr. 299).

A December 16, 2014 MRI of the lumbar spine revealed a disc herniation in the left lateral recess creating significant left neural foramen narrowing, post surgical changes of the L4 and L5 vertebrae compared to the 2010 study, and degenerative disc disease (Tr. 326). By November 2014, the claimant still had absent reflexes and was ambulating with a cane (Tr. 328),

A state reviewing physician found on June 24, 2013 that the claimant could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk a total of four hours in an eight-hour workday, and sit six hours in an eight-hour workday, could perform unlimited pushing and pulling including operation of hand/foot controls, and had no postural, manipulative, or environmental limitations (Tr. 57). This was affirmed on reconsideration on July 29, 2013 (Tr. 66-67).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in the record. However, the ALJ concluded that

the claimant was not credible in light of unspecified discrepancies between the claimant's alleged symptoms and the objective documentation in the file, and that the claimant had not provided enough convincing details as to "factors that precipitate the allegedly disabling symptoms" (Tr. 18). Furthermore, the ALJ discredited the claimant because he had more recent negative straight leg raise tests and had not lost weight (Tr. 18). The ALJ then gave: (i) significant weight to the statements from the claimant's surgeon immediately following the second surgery; (ii) little weight to Dr. Finck's opinion because he only saw the claimant a few times and statements that the claimant are disabled are issues reserved to the Commissioner; and (iii) light weight to Dr. Ellis's opinion because even though the claimant complained of back pain, he had negative straight leg raise tests more recently, and the opinion was not consistent with his treatment records for unspecified reasons (although he gave "considerable weight" to Dr. Ellis's treatment notes) – essentially adopting every positive report to be found in the record and discrediting any negative report or opinion.

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical

opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ 404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physician. The ALJ's analysis, as described above, falls short in this case. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record. It appears that the ALJ took great pains to ignore all evidence unsupported by the state reviewing physician opinion. As such, this was an improper assessment where the ALJ completely discounted the repeated notations in the record regarding the claimant's

documented reduced range of motion, pain with range of motion, continued back pain, and absent lower extremity reflexes and found that he was nevertheless able to perform the assigned RFC here, with the attendant total sitting/standing requirements and lift/carry requirements in an eight-hour workday. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

In addition to the recommendation for remand for the above reasons, the undersigned Magistrate Judge further notes the claimant's assertion that the ALJ erred in his credibility analysis. Since the ALJ's opinion was issued, Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). Accordingly, on remand the

ALJ should also apply the Soc. Sec. Rul. 16-3p to analyze the intensity, persistence, and limiting effects of the claimant's alleged impairments on remand, and the undersigned Magistrate Judge specifically cautions the ALJ to look at the totality of the record rather than hanging such a finding almost solely on a claimant's inability to lost weight.

Because the ALJ refused to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge finds he did not properly consider it. Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further proper analysis of the claimant's RFC in light of *all* the evidence and *all* of the claimant's impairments. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 22nd day of August, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**